What would you call the first? 1531-56 People v. Earle Echols. Parties please step forward. And identify yourselves this morning for the record. Haley Pack on behalf of the people of the state of Illinois. John Grappella on behalf of the defendant appellant Earle Echols. Very well, good morning to you both. You may disagree with the rules. You will allot 15 minutes for appellant, 15 for appellee. Would you like to reserve time for rebuttal? I will, Your Honor. Very well. When you are ready to proceed, we are ready to hear. May it please the Court, Counsel. As I said, my name is John Grappella. I represent Earle Echols. Mr. Echols was convicted of aggravated DUI after a bench trial and sentenced to 18 months in prison. We are asking this Court to dismiss his convictions because the state denied his rights to a speedy trial. In Barker v. Wingo, the United States Supreme Court set forth a four-part test for courts to determine whether defendants have been denied their rights to a speedy trial. The factors are the- Mr. Grappella, I'm going to ask you to keep your voice up. That is not a mic. It's a recording device. Yes, Your Honor. The factors are the length of the delay, the assertion of the right to a speedy trial, the reasons for the delay, and the prejudice to the defendant. In this case, Mr. Echols waited 16 months to be taken to trial. The state and Mr. Echols disagree about whether or not this is a presumptively prejudicial delay. Under the rules set forth in Barker, there has to be- How did he get to 16 months? Well, Mr. Echols was arrested on Christmas Day, 2013. The state charged him that day with misdemeanor DUI. That charge continued until January 27, 2014, so there's about a month there. Then the charge was nollied, but Mr. Echols wasn't released from prison. Now, what is the effect of the nollie? We believe the effect is nothing in this particular case for two reasons. One, because it was the state's choice to nollie the case, and then it recharged Mr. Echols six months later with a superseding indictment. That was a choice that the state made. There was no explanation in the record given for why the state made that choice, but it did. And it did affect Mr. Echols, and we'll get to that, I suppose, in just a minute. But the second reason is, quite frankly, because precedent states that the time in between the two- the uncharged time in between when the state nollied the original charges and brought the superseding indictment should count against the state for speedy trial purposes. Does it matter whether there was bad faith on the part of the state, or is it just a matter of the state having nollied? Well, again, we don't know if it was bad faith. We don't know anything about why the state nollied the charges. Do you presume bad faith? I'm not presuming bad faith either. But even if it was mere negligence, that also is held against the state for determining the length of the delay. Now, obviously, bad faith would be more heavily weighed against the state, but mere negligence is also still weighed against the state. The other point is, in Pieper v. Kulkowski, the Fifth District was confronted with a similar problem. In Kulkowski, the defendant was originally charged with a felony and a misdemeanor. The misdemeanor was nollied. The felony was dismissed. The defendant was shipped over to Missouri to serve time for reasons that aren't clear in that particular appellate opinion. Nonetheless, once that defendant was released from custody in Missouri, the state refiled the misdemeanor and the felony charge, and the Fifth District held that time against the state. Even though it was an uncharged period, the Fifth District determined that that one-year delay was enough to trigger a Barker inquiry. And so we believe both of those reasons, because this was a charging decision by the state and because prior courts have held this time against the state, those are good reasons to hold this particular six-month period against the state. I also note that the state doesn't have any authority in its brief to suggest anything to the contrary to the rule that was set forth in Kulkowski. Is there no case in Illinois that addresses the issue of nollie? I'm unaware, Your Honor. I would have to do additional research, but certainly there is none cited in the state's brief. Are you familiar with People v. Totski, the Second District Appellate Court opinion? I think I've seen Totski, Your Honor. I'm not sure if that specifically involves a nollie charge. All right. But I am aware that that is out there. I think there's another point to be made, and with respect to the length of the delay. Obviously we believe that it should be the full 16 months, but even if that six-month uncharged period is excluded from the period that we're looking at, a Barker inquiry is still warranted because we're looking at a 10-month delay. Certainly that one-month period between when the charges were initially brought and nollie, that counts. It counted for the purposes of sentence credit. There's no reason to exclude that. And then once the state files a superseding indictment, Mr. Echols sits in prison for an additional nine months until he finishes that prison sentence and then is brought to. . . Is there a violation of probation in this case? There is, Your Honor. Which would have landed the defendant in jail anyway? Well. . . For a period of time, and if so, what period of time would that have been? So he was on probation for possession of a controlled substance in a Cook County case. My understanding from the record is that there was a violation of probation hold put on him before this accident occurred. And once he was arrested on this case, on the DUI in this case, he was also held on that violation of probation. And how many days was he held on that violation? So he would have been held from December 26, 2013 to February 28, 2014. So that would be roughly two months, Your Honor. And then he gets sent to the Illinois Department of Corrections on the violation of probation sentence. That was actually a three-year sentence, and she served it 50 percent. That's in the PSI. I would note that as a Cook County case, the Cook County State's Attorney's Office represented the state in that case. It had actual knowledge that he received a prison sentence and knew where he was just by virtue of the fact that it was the prosecuting agency in that violation of probation case. So that kind of moves us into the second factor, which is the reasons for the delay. Once the state files a superseding indictment, it doesn't produce Mr. Echols for the trial. It does not write him in. It doesn't send him a copy of the indictment, even though at this point the state who had represented the ASA's office who had represented the state in the probation hearing knew that he was in prison. Instead, the state mails the indictment to an address somewhere in Cook County. Obviously, he doesn't appear for the subsequent hearing, and then the state asks for a warrant, even if it was justifiable for the state to not know where he was. Once the court issues a warrant, it's unjustifiable for any of the various law enforcement agencies to have not produced him for a hearing following that issuance of a court order. And at the end of the day, he ends up serving an additional nine months, and it isn't until he hits the pavement and is released from prison that he's immediately picked up and brought to trial on these particular charges. This delay is entirely attributable to the state. All 10 months are attributable to the state. It seems to be grossly negligent for the state to not know that it has a particular defendant in its own custody. Are you equating gross negligence with bad faith? Well, Your Honor, the ASA, once this came to light during a bond review hearing following Mr. Echols' release from prison, when the public defender indicated that there should be no bond because this is all the state's fault, the state's attorney initially said it was Mr. Echols' fault because he voluntarily failed to appear for a hearing. When it was brought to that attorney's attention that Mr. Echols was serving a prison sentence, he asserted that he conducted a custody check nine months prior when the warrant was issued. Now, we're not arguing that that's a lie. He's an officer of the court. We're assuming we're taking the ASA at his word. But that custody check certainly wasn't sufficient because it didn't reveal that this particular defendant was in state custody. And however it was done, it was done incompetently or with a poor computer system, which is also maintained by the state. I don't see any way of getting around the fact that this is the state's fault. So, no, we're not claiming that this is bad faith. But we are saying that this is certainly negligent and, in our opinion, grossly negligent. So the 10-month period is certainly attributable to the state. We believe that all 16 months should be counted and that additional six-month charging delay should be attributable to the state because it was the state's charging decision in the first place. That gets us to, and so that second factor should weigh in Mr. Echols' favor, just like the first factor should at least trigger the inquiry. The third factor is the assertion of the rights to a speedy trial. Now, Mr. Echols didn't know that he had been charged until he got picked up on the new charges. He then got a public defender, and within 10 days of that public defender's appointment, the public defender files a very specific detailed motion to dismiss, which was supported by case law, was not a stock motion, demanding that the charges be dismissed. Was there a demand? I'm sorry? Was there a demand for trial? There is nothing in the record suggesting that there was a demand for trial. But, again, Mr. Echols did not know that the charges had been refiled because he never received them. Once he gets the public defender, instead of demanding a trial immediately, the public defender demands that the charges be dismissed because the violation had already occurred. And within, so once the public defender is appointed, there's a status date that's previously set. A few days later, the public defender files this motion to dismiss. Unfortunately, the public defender was unable to appear for that status date, but sends an associate who reschedules the status hearing to occur within three business days, quite possibly as fast as possible. And at that point, the state files a written response to the motion to dismiss. Everybody at that point agrees that the public defender should read that response and be able to respond to it at a hearing on the motion to dismiss. So the motion hearing is rescheduled and by agreement for nine days later, and it's at that point that it's decided and denied. I can't think of any way that this could have been litigated quicker in the Cook County Circuit Court. Well, why would, I understand that, you know, at the time that a demand might have been made, the defendant wasn't aware of the charge, but why would that count against, weigh against either party actually? Well, so there's a series of cases that indicate that a defendant can't be faulted for failing to demand a speedy trial. No, he's not, he wouldn't, I agree, wouldn't be faulted, but why would we fault the state? So why would this not be just a neutral factor? Well, I think it's important at least that the defendant makes some assertion to the right to a speedy trial, and here he did, so that at least to the extent that it moves the inquiry along, I think that weighs in his favor. It's also notable how quickly he did assert the right. As soon as he could find that he, as soon as he spoke with his attorney, essentially, his attorney files the motion. I think that's a speedy assertion. It certainly can't weigh against the defendant, and to the extent that this is solely attributable and a factor that solely falls on the defense, I think that there's, certainly doesn't weigh in favor of the state. And that's how it's getting prejudice. Yes, Your Honor. Where, where can you prove prejudice here? Well, assuming you've got 10 months, and we're going with you on that, and it's getting close to a year, and it triggers a constitutional analysis, where is the prejudice here? Well, certainly the prejudice, as we asserted in the briefs, is the loss of an opportunity to serve a concurrent sentence. And that's not nothing in any case, and it's especially poignant here. Mr. Echols ends up receiving an 18-month prison sentence at 50%. He would only have to serve nine months of that sentence with good time credit. Even a 10-month delay is more than the time period that he would have necessarily had to serve in the Department of Corrections. And so there are a number of cases that have recognized, specifically three people being Harflinger, people being Brennemeyer, and people being Kilkowski, that the loss of an opportunity to serve a concurrent sentence is prejudicial. In this case, the state hasn't provided any reason to believe that Mr. Or any law that would suggest that Mr. Echols could have served a concurrent sentence. It would be more sympathetic if the violation of the probation was for the incident which occurred, but this is something separate. He violated for a different offense. It's a separate total offense. It is a separate offense, but there's no reason to believe that he would not have served a concurrent sentence had the state diligently and expeditiously charged the case or prosecuted the case altogether. It would have been before a judge, and the judge would have ultimately imposed sentence, and those sentences would have started running together as soon as he was remanded to the IDOC. There is, in addition to these cases that say that a concurrent sentence, the loss of an opportunity to serve a concurrent sentence, is prejudicial, they also state that undue pretrial incarceration is also prejudicial. In this particular case, Mr. Echols was sent back to the Cook County Jail and had to wait in the jail for additional time while this case was pending. I think that there's a third form of prejudice that this court should at least consider, though the lost opportunity of concurrent sentence is certainly the most important. Mr. Echols was prepared to get out. He served this prison sentence, this revocation of probation sentence. He believed that he was getting out. He was ready to get out and restart his life. As soon as he was released the next day at his halfway house, he was picked up on these new charges and got yanked back into the system. I think it's bad, it would have been bad had he been written in the day before he was released, but it certainly is worse that he was brought in the day after he was released. So we believe that all of these factors do, in fact, weigh either in Mr. Echols' favor or against the State. The delay is 16 months in our opinion or, at a minimum, 10 months. The reason for the delay is entirely attributable to the State. Mr. Echols did immediately, as soon as he could, assert his right to a speedy trial. And this is not a nebulous form of prejudice. He did lose the opportunity to serve a concurrent sentence. For these reasons, we're asking this Court to consider. That weighs heavily as the other factors that embark or that relate to prejudice, though, the loss of an opportunity to call particular witnesses and the like. Well, I mean, within that factor, there are some weighted factors that may be significant. Sure. If, for example, an extremely exculpatory witness had passed away or something, that would be also a factor that could weigh in a defendant's favor. But none of those occurred, is that correct? Correct, Your Honor. In this particular case, the prejudice is limited to sentencing. But I would note two things about that, Your Honor. Belcher doesn't say that prejudice has to be one specific kind of prejudice. It does just say that it is a factor to be weighed against all of the others. And in at least one other case, and I believe that it is People v. Belcher, the appellate court never even looked at prejudice because it found that the State's failure to produce a defendant who had been in State custody was so inexcusable that the trial court in that particular case did not err in failing to look at prejudice because the State's misconduct in failing to produce or negligence in failing to produce an incarcerated defendant was just too bad. That was a 29-month delay, though, wasn't it, not 10? It was, Your Honor. But I think the basic principle in that case stands, and the principle would be the State has a duty to know who it has in prison. And in particular in this case, as in Belcher, the State did not know who was in prison. And I think that that factor weighs especially heavy against the State in this case. So for those reasons, we ask that this Court reverse the trial court's decision and vacate Mr. Echols's convictions. Good morning. May it please the Court. Haley Pack on behalf of the people of the State of Illinois. Your Honor, the defendant's right to a speedy trial was not violated, where the delay was 8 months, the reason was a possible clerical error, and defendants suffered no prejudice. Defendant attempts to aggregate the time period before he was indicted with the time period from indictment to arrest to create a delay of over a year, thus triggering a Barker analysis. Further, defendant's claim of prejudice is speculative and not supported by the record. A review of the Barker factors indicates that the trial court properly denied defendant's motion to dismiss the indictment based on speedy trial. The first factor, the length of the delay. Here, the length of the delay is at most 8 months, well below the presumptively prejudicial standard of a 1-year delay. A 1-year delay, as your Honors are aware, marks the point where courts deem the delay unreasonable enough to trigger a full Barker inquiry. Here, the time period is calculated from the date of the indictment, July 28, 2014, to the date of arrest. So some courts say it's close to a year? Your Honor, yes. This is close to a year. This is close to a year. However, I believe the facts here still show that we are 4 months below the year that courts have considered. And if you look at the facts in the courts that have said nearly 1 year, they're more egregious than this case because the State had done nothing to locate the defendant, to inform the defendant of the charges against him. It's our position, Your Honors, that the time between defendant's case that was nollied through the case that was indicted should certainly not be calculated in the length of the delay because defendant was not charged with this offense at the time. He was not awaiting trial, and he was not incarcerated on this offense. Thus, defendant cannot now lump in the time between the nolly and the indictment to bring his delay to over a year. Moreover, defendant did not allege pre-indictment delay in his opening brief or in the circuit court below. Therefore, we believe this argument is forfeited. Because defendant's claim should go at the outset, because the length of the delay is not over 1 year, we should not even have a full Barker inquiry. Nonetheless, the other 3 factors favor the people and support the trial court's denial of defendant's motion to dismiss his indictment based on speedy trial. Well, what with respect to this computerized check that didn't work, I mean, a little trouble that the State has a defendant in custody and can't identify or find the defendant, and the defendant is sitting there, I mean, just waiting. Your Honor, I would suggest that this doesn't happen very frequently, and that's why we don't really see this in any type of cases. I think it's important to note there was no bad faith on the part of the State. This was not intentional. This is not malfeasance. When a custody check occurs, the assistant State's attorney uses the defendant's information. This may be his IR, his State ID number, his FBI number, or his name, and we check the Illinois Department of Corrections and the Cook County Department of Corrections. And in this particular case, defendant did not appear to be in either of those institutions, clearly an error. I think there needs to be a systematic understanding that the defendant cannot take advantage of this error when there is no presumptive prejudice. He has not proven that this error, the custody check that went awry, has impaired his defense in any way. The people in no way attempted to gain a tactical advantage over the defendant. In fact, they attempted on two occasions to inform him of the charges against him. They sent a letter to the defendant's last known address and then conducted the custody check. Your Honors, we submit this is similar to People v. Crane where an appellate court's mandate was accidentally not transmitted to the trial court for 11 months. Here, a mistake in a custody check created an even shorter delay, which was 8 months. The people made a diligent and good faith effort to locate the defendant and notify him of the charges, and defendant has not proven otherwise. The third factor, defendant's assertion of his right to a speedy trial. Here, the court must evaluate the defendant's conduct. Defendant asserted his right by filing the instant motion. The matter was continued by agreement on several occasions for approximately 6 weeks. Defendant's argument is weakened in light of the fact that his counsel, after asserting his right to a speedy trial, continued to request by agreement continuances. The last factor is prejudice. Defendant did not suffer any prejudice. His assertion that he would be entitled to concurrent sentences is completely speculative. Defendant has failed to establish why he would have been entitled to concurrent sentencing when there is no absolute right to concurrent sentencing. While it may be the default, as Your Honors are aware, the legislature allows for trial courts to determine if consecutive sentencing is appropriate on any offense where the trial court has made a finding that the protection of the public requires such a sentence. When we take a look at the defendant's background, it is unreasonable to assume that the defendant would have been absolutely entitled to concurrent sentences. It is not a foregone conclusion. His prejudice is completely speculative. His criminal history and substance abuse certainly do not warrant concurrent sentencing. Additionally, the judge at trial who denied defendant's motion for a speedy trial is the same judge who would have sentenced the defendant. Who better than that individual to consider if defendant would have gotten concurrent sentences? In addition, defendant has not demonstrated that evidence was destroyed, that the witness's memories have faded, that witness has passed away. There is nothing that defendant has shown that would have impaired his defense. Nothing about a minimal delay for a total of eight months affected defendant's ability to prepare his case for trial. In sum, defendant's arguments are based on speculation from a very scant record. The rationale behind a constitutional speedy trial violation is to prevent gamesmanship, certainly not to be able to be used as a get-out-of-jail-free card when a custody check goes awry. Here, the trial court's ruling was not manifestly erroneous. We ask your honors to affirm the trial court's denial of defendant's motion to dismiss his indictment based on speedy trial. Thank you. Thank you. Your honors, I'd just like to address a few points. The State seems to suggest that we did not raise this as a 16-month issue in our brief. It certainly was raised. It's the first sentence of the argument that this was a 16-month delay, and it's discussed on pages 4 through 7. I think the most important point and the thing that the State seems to spend a lot of time on is the lost possibility of a concurrent sentence. This is a recognized form of prejudice, and to be clear, the courts have found that it's a lost possibility of a concurrent sentence, not necessarily the loss of an actual concurrent sentence, in large part because we can't know what the sentence would ultimately have been. But I do agree with the State that it is the judge who should be able to make these decisions, not the State. The State, by waiting to file a superseding indictment and then waiting to produce Mr. Eccles for a trial, removed any discretion that a judge may have had in this particular case to impose a concurrent sentence and by effect created a situation where it would have to be a consecutive sentence, particularly because he was arrested the day after he was released on the sentence that he had just completed. So it is the lost possibility of a concurrent sentence, not the loss of an actual concurrent sentence. There's also no evidence to suggest that a judge would have felt like this was a particularly egregious or serious case such that a consecutive sentence would have been necessary or opposed within that judge's discretion. The State certainly did not think that this was a serious case. It thought that Mr. Eccles was out on the street for at least six months before it even brought a superseding felony indictment. That's assuming that the ASAs involved did not know that he was in prison. So for those reasons, I think that it is clear that there is an actual prejudice here and that it matters. I think it also, and that should be held against the State, but it shouldn't be lost that, again, all of these errors are attributable to the State, and the State says it's a possible clerical error. Well, it's a clerical error that involves all State assets. The State controls the computer that determines where people are and what they use to do a custody check. The State also was, a State agency was also responsible for incarcerating Mr. Eccles. So you think that those reasons suggest that the State should be held responsible for this error. Even if it's just negligence, it's still held against the State. We certainly think it's more than just mere negligence here. And finally, the State goes with eight months. It continues to say eight months for the period of delay. It seems to only calculate that delay from the date that the superseding felony indictment was filed. There's, it doesn't cite any particular case law to suggest, even at its best, that the misdemeanor time that he was waiting for the trial before it was nollied shouldn't count. That certainly shouldn't, in our opinion. And that gets you to, that gets this Court to at least a ten-month delay. And again, there have been a number of cases in which appellate courts have looked at shorter delays, certainly less than one year, and conducted a Barker analysis, and we think it's warranted in this particular case. Thank you, Your Honors. Thank you very much. Thank you, Counsel. The case was well briefed and argued. The matter will be taken under advisement, and a disposition will be issued in due course.